AMS CONSTRUCTION CO., INC. d/b/a
AMS Staff Leasing, Appellant,

v.

WARM SPRINGS REHABILITATION
FOUNDATION, INC., Appellee.

No. 13–01–286–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Nov. 21, 2002.

---

D. Bradley Dickinson, Dickinson & Associates, William E. Reid, Dallas, for appellant.

Bill W. Russell, Victoria, for appellee.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

### OPINION

Opinion by Justice RODRIGUEZ.

Appellant, AMS Construction Co., Inc. d/b/a AMS Staff Leasing (AMS), filed a $14,155.06 mechanic's lien against a hospital owned by appellee, Warm Springs Rehabilitation Foundation, Inc. (Warm Springs). AMS brought the present lawsuit against Warm Springs seeking to foreclose on the lien.[1] Warm Springs answered and filed a counterclaim against AMS requesting a declaratory judgment and attorneys' fees.[2] The trial court granted Warm Springs's motion for partial summary judgment on the liability issues. Following a bench trial, the trial court awarded attorneys' fees to Warm Springs. The final judgment incorporated the partial summary judgment.[3] By five issues, AMS complains generally that the trial erred in granting Warm Springs's summary judgment motion. AMS also challenges the competency of Warm Springs's summary judgment evidence. We reverse and remand.

### I. BACKGROUND

Warm Springs hired a general contractor, Coleman–Roth Construction, Inc.,[4] to build a hospital in Victoria, Texas. As general contractor, Coleman–Roth hired a subcontractor, Third Coast Mechanical Contractors, Inc. (Third Coast), to install the air conditioning and heating systems. AMS and Third Coast entered into a Professional Employer Organization Services Agreement. AMS claimed, pursuant to the agreement, it was to furnish labor to Third Coast for the construction of the hospital, and Third Coast was to pay AMS the invoice price of the labor furnished. Warm Springs contended AMS only provided administrative services for Third Coast, specifically payroll services.

Warm Springs filed a motion for partial summary judgment asserting AMS did not qualify as a "person entitled to a lien" under section 53.021(a)(1) and (2) of the Texas Property Code. Warm Springs also urged the affirmative defenses of estoppel and payment. As summary judgment evidence, Warm Springs attached the affidavits of Stephen W. Roth, president of Coleman–Roth; Harvey Knezek, an employee of Coleman–Roth; and Johnnie Earl Gra-

---

1. AMS also sued subcontractor, Third Coast Mechanical Contractors, Inc. (Third Coast), for breach of contract and on a sworn account. AMS claimed Third Coast owed it $14,155.06 for labor AMS furnished to Third Coast to improve Warm Springs's property. The trial court granted AMS's default judgment against Third Coast. That default judgment is not being challenged on appeal.

2. Warm Springs also crossclaimed against Third Coast for contribution and indemnity. However, Warm Springs's motion for summary judgment was granted, therefore, it was not necessary to address issues related to contribution and indemnity.

3. This appeal is limited to the summary judgment entered in favor of Warm Springs. AMS brings no appeal regarding the bench trial on attorneys' fees.

 Furthermore, based on our review of the record, the judgment was final and appealable as to all parties and claims. *See Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 195 (Tex.2001).

4. Coleman–Roth Construction, Inc., is now known as Roth Construction.

ham, a foreman at the work site. In support of its amended response to Warm Springs's summary judgment motion, AMS filed the amended affidavit of Charles D. Wood, Jr., president and shareholder of AMS. Declaring the lien invalid, void, and unenforceable, and without stating its reasons, the trial court granted Warm Springs's motion "in all things."

## II. SUMMARY JUDGMENT EVIDENCE

■ On appeal, both AMS and Warm Springs complain that the summary judgment evidence of the other party is conclusory. "An objection that an affidavit is conclusory is an objection to the substance of the affidavit that can be raised for the first time on appeal." *Haynes v. City of Beaumont*, 35 S.W.3d 166, 167 (Tex.App.-Texarkana 2000, no pet.); *see Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984); *Lara v. Tri–Coastal Contractors, Inc.*, 925 S.W.2d 277, 279 n. 3 (Tex.App.-Corpus Christi 1996, no writ). Thus, the complaints regarding conclusory statements are properly before this Court.

A. AMS's Objections to Warm Springs's Summary Judgment Evidence

■ By its second issue, AMS objects to the following portions of Roth's affidavit as being conclusory and "replete with unsubstantiated opinions:"

I have reviewed the contract which AMS produced to be the contract between AMS and Third Coast. I have read it. Under the terms of that written contract AMS did not provide labor under a contract as a subcontractor to improve the real estate in question or to improve or repair the buildings or construction in question.... [5]

\* \* \* \* \* \*

These [contract] terms are included within the written contract provided to us by AMS, which is attached hereto as *Exhibit "A"* to this affidavit and incorporated herein as an admission against interest by the Plaintiff, AMS. In the construction industry, this clearly means that the employees in question who performed the labor were employees of Third Coast, and AMS was functioning much like a personnel department would for a company; thus AMS['s] services were part of general overhead. AMS['s] pleadings claim that it provided labor or improved the real estate in question are contrary to its written agreement with Third Coast and contrary to AMS['s] representations to me. From reviewing the AMS contract, given my experience in the construction industry, it is obvious to me that under this contract the employees of Third Coast remained employees of Third Coast and by this contract they were entitled to direct and control their employees. It is clear to me that the reference in the contract to a "co-employment" situation did not take these employees away from Third Coast, but caused them to remain Third Coast's employees. For AMS to claim these employees were employees of AMS and that AMS was entitled to a lien would be a sham and a fraud, as this is contrary to what they told us during the job, contrary to what I personally observed, contrary to the written contract and contrary to the facts.

Coleman–Roth and Warm Springs relied upon all the representations and actions of AMS in making payments. Had

---

5. AMS also complains of the following sentence contained in this paragraph: "AMS did not improve this real estate in Victoria, Tex-

as." However, this same statement appears earlier in the affidavit, without objection.

Third Coast actually had a subcontractor who provided labor for the job, to protect the owner, and for the benefit of the owner, Coleman–Roth would have made sure that the subcontractor was paid, its payment ensured or its potential lien claim released before funds would have been released to Third Coast. Thus, both Coleman–Roth and Warm Springs relied on the actions and representations of AMS based upon the facts as I personally observed on the job site, as I personally know from talking to an AMS representative, and as I personally know from many conversations from Third Coast and its employees, AMS['s] present claim is a sham.

\* \* \* \* \* \*

AMS had the right and the power to retain those funds or control those funds, but it elected to allow them to be deposited to Third Coast's account. . . .

\* \* \* \* \* \*

From my conversations it was very clear to me that AMS was serving as a payroll service similar to how it is common in the Victoria area for a company that does not have a bookkeeping staff to hire a local accounting firm or other bookkeeping service to handle their payroll and governmental withholding taxes, deposit their funds for that service and then that service will write the checks both to the employees and to the federal government. This is a mere payroll service. AMS was not directing the work of the employees and was not at the job site . . . . (Underlining in original.)

▮▮▮▮ Affidavits supporting and opposing a motion for summary judgment must set forth facts, not legal conclusions alone. *See Mercer*, 676 S.W.2d at 583; *Larson v. Family Violence & Sexual Assault Prevention Ctr. of S. Tex.*, 64 S.W.3d 506, 514 n. 6 (Tex.App.-Corpus Christi 2001, pet.

denied); *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 130 (Tex.App.-Houston [1st Dist.] 1999, no pet.). "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Haynes v. City of Beaumont*, 35 S.W.3d 166, 178 (Tex.App.-Texarkana 2000, no pet.). Therefore, affidavits filed in support of or opposing a summary judgment motion must be made on personal knowledge; must set forth such facts as would be admissible in evidence; and must affirmatively show that the affiant is competent to testify to matters stated therein. TEX.R. CIV. P. 166a(f); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex.1996); *Larson*, 64 S.W.3d at 511. .

Roth set out in his affidavit that he had worked in construction since 1965 and had been an officer in Coleman–Roth, a commercial and industrial general contractor, since 1973. However, these facts do not establish Roth is competent to testify as to narrow matters related to whether AMS was the "employer of the laborers" in this case. TEX.R. CIV. P. 166a(f); *Hood*, 924 S.W.2d at 122. The affidavit does not set forth facts which show Roth's competency, expertise or personal knowledge in the area of payroll or staff leasing services, or co-employment relationships.

In his affidavit, Roth testified "AMS was never on site, never performed any work on the Project and never had any employees of it perform work on the Project. AMS did not improve the real estate." Representatives from AMS told Roth "AMS was a payroll service engaged by Third Coast to perform payroll and administrative services," and "the representative was talking to [him] from AMS's offices in Dallas, Texas." Roth also stated that the employees who performed the labor told Coleman–Roth's representatives "they were employees of Third Coast," and "Third Coast told [Coleman–Roth] they

were employees of Third Coast." Otherwise, Roth only generally referred to what he "personally observed and what the actual personnel on site told [him]."

Roth offered no other specific facts to support his conclusory statements regarding the contract, AMS's alleged employer status, or Coleman–Roth's and Warm Springs's reliance on representations and actions of AMS in making payments. We cannot conclude Warm Springs provided underlying facts to support the conclusions about which AMS complains. *See Haynes,* 35 S.W.3d at 178. Because Roth's affidavit does not set forth facts which establish his competency, expertise or personal knowledge supporting the opinions given or conclusions drawn, we conclude the complained of portions of the affidavit are based on his subjective belief and do not constitute competent summary judgment evidence. *See Trico Techs. Corp. v. Montiel,* 949 S.W.2d 308, 310 (Tex.1997); *Texas Division–Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 313–14 (Tex.1994) (per curiam). Thus, we will not consider those portions of Roth's affidavit. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965); *Montemayor v. Chapa,* 61 S.W.3d 758, 762 (Tex.App.-Corpus Christi 2001, no pet.).

AMS brings no other objections to Roth's affidavit. Nor does AMS object to the affidavits of Knezek or Graham also filed in support of Warm Springs's summary judgment motion. Moreover, the conclusory statements in Roth's affidavit do not negate his entire affidavit. *See Muhm v. Davis,* 580 S.W.2d 98, 102 (Tex. Civ.App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.). Therefore, we will consider the remaining summary judgment evidence filed in support of Warm Springs's motion.

Accordingly, AMS's second issue is sustained in part and overruled in part.

**B. Warm Springs's Objections to AMS's Summary Judgment Evidence**

 In response, Warm Springs complains that statements made in Wood's affidavit regarding how AMS conducts business are not competent because the affidavit does not set forth facts showing specific knowledge of what happened in Victoria County. It appears that Warm Springs is complaining about paragraph 3 wherein Wood states:

> AMS is in the business of providing staff leasing services to its clients. The clients, mainly employers in the construction industry, retain AMS to employ its employees who are then "leased" to the employer at a cost reduction. In other words, AMS makes the payroll for the employer and the employer pays AMS a fee for its services.

In his affidavit, Wood set out that he was a shareholder and president of AMS and was familiar with all aspects of the business.[6] Wood's experience in this area and his relationship with AMS as shareholder and president show his competence to testify about AMS's business activities. *See Larson,* 64 S.W.3d at 512. Thus, we conclude this portion of his affidavit is competent summary judgment evidence.

 Warm Springs also complains of Wood's references to "employees of AMS." It specifically argues that the following statements, found in paragraphs seven,

---

6. The affidavit of an interested witness may serve as competent summary judgment proof so long as the affidavit is clear, positive, and direct; otherwise credible and free from contradictions and inconsistencies; and readily controvertible. *See* Tex.R. Civ. P. 166a(c); *Trico Techs. Corp. v. Montiel,* 949 S.W.2d 308, 310 (Tex.1997); *Gordon v. Western Steel Co.,* 950 S.W.2d 743, 749 (Tex.App.-Corpus Christi 1997, pet. denied).

eight and nine, are conclusory and not supported by facts:

AMS employed the Third Coast employees and leased them back to Third Coast;

AMS retained the exclusive right of direction and control over the employees . . . .; and,

In September and October 1998, all of the employees leased to Third Coast were employees of AMS.

We agree these statements are not supported by the facts set out in Wood's affidavit or its attachments, and, therefore, are not competent summary judgment evidence. Because these sentences do not negate the whole affidavit, however, we will consider the remainder of Wood's amended affidavit filed in support of AMS's amended response. *See Muhm*, 580 S.W.2d at 102.

### III. STANDARD OF REVIEW

Warm Springs filed a traditional summary judgment and a no-evidence summary judgment. *See* Tex.R. Civ. P. 166a(c), (i).

We review the trial court's granting of a traditional motion for summary judgment *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Tex. Commerce Bank-Rio Grande Valley v. Correa*, 28 S.W.3d 723, 726 (Tex.App.-Corpus Christi 2000, pet. denied). We must determine whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action or whether the defendant has conclusively established all elements of its affirmative defense. *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex.1997); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996); *Crain v. Smith*, 22 S.W.3d 58, 59 (Tex. App.-Corpus Christi 2000, no pet.). The

non-movant has no burden to respond to a traditional motion for summary judgment unless the movant conclusively establishes its cause of action or defense. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000).

■ A no-evidence summary judgment asserts there is no evidence of one or more essential elements of claims upon which the opposing party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a pretrial directed verdict, to which the appellate courts apply a legal sufficiency standard of review. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet.); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex.App.-Austin 1998, no pet.). In response to a no-evidence motion, the non-movant is only required to present evidence that raises a genuine fact issue on the challenged elements. *McCombs v. Children's Med. Ctr.*, 1 S.W.3d 256, 258 (Tex.App.-Texarkana 1999, pet. denied). A no-evidence summary judgment is properly granted only if the non-movant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to the challenged element of the claims. Tex.R. Civ. P. 166a(i); *Jackson*, 979 S.W.2d at 70–71.

■ In reviewing a summary judgment under either standard, "all evidence is to be construed in favor of the non-movant, to whom every reasonable inference is allowed and on whose behalf all doubts are resolved." *Alvarez v. Anesthesiology Assocs.*, 967 S.W.2d 871, 874 (Tex.App.-Corpus Christi 1998, no pet.). When the trial court's order does not specify the grounds relied on for the ruling, the summary judgment will be affirmed if any of the theories advanced in the motion are meritorious.

*Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

## IV. GROUNDS FOR SUMMARY JUDGMENT

By issues one, three, four, and five, AMS contends the trial court erred in granting summary judgment in favor of Warm Springs. Warm Springs's traditional motion for partial summary judgment presented three grounds for summary judgment: (1) AMS was not a party entitled to assert a lien under section 53.021 of the Texas Property Code because it did not labor to construct the hospital; (2) AMS was estopped to assert the lien because it represented itself to be a payroll service; and (3) AMS received actual payment of a portion of the amount of money it is claiming to be due.

By its no-evidence summary judgment, Warm Springs urged the following bases: (1) the lien affidavit does not contain a legally sufficient property description, thus, failing to meet the requirements of section 53.054 of the Texas Property Code; and (2) AMS failed to show that it was a person entitled to assert a lien pursuant to section 53.021 of the property code.

Because the trial court did not specify the basis for the order granting the summary judgment, we will affirm the judgment if any of the theories advanced in the motion are meritorious. *See id.*

### A. Person Entitled to Assert Lien

Section 53.021 of the Texas Property Code provides, in relevant part, that a person has a lien if the person labors or furnishes labor for construction or repair in this state of a house, building, or improvement, and the person labors or furnishes the labor or materials under or by virtue of a contract with the owner or the owner's agent, trustee, receiver, contrac-

tor, or subcontractor. Tex. Prop.Code Ann. § 53.021(a) (Vernon Supp.2002).

■ AMS contends it is a party entitled to assert a lien under section 53.021. AMS urges that its summary judgment evidence establishes there is, at a minimum, a question of fact as to whether AMS is the employer of the laborers, and, thus, a party entitled to assert a lien under section 53.021.

Warm Springs filed the affidavits of Graham, Knezek, and Roth in support of its motion. Graham testified the employees doing the heating and air conditioning work were Third Coast employees working under his direction, and that AMS had no employees at the work site and had no authority or right to direct his work or instruct him in any way. He also testified he was told AMS was a payroll service, which was consistent with what he observed. Knezek testified neither AMS nor its employees did any work on the project. Nor did it have permission or consent to do any work on the project. He stated he was aware that the workers were Third Coast's employees, doing work for Third Coast. Roth testified AMS was not on site, never performed work on the project, and never had any employees perform work on site. He stated AMS did not improve the real estate, and that the employees performed the labor under the direction and control of Third Coast.

However, in support of AMS's amended response to Warm Springs's motion, AMS's President Wood testified,

AMS and Third Coast ... entered into ... [an] agreement whereby AMS agreed to furnish labor to be used at the [hospital] ..., and Third Coast agreed to pay AMS the invoice price of the labor furnished to Third Coast. Pursuant to the terms of the agreement, AMS invoiced Third Coast for the labor and made payroll for Third Coast and Third

Coast agreed to pay AMS a fee for its services.

\* \* \* \* \* \*

As evidenced in the attached invoices, paycheck stubs, paycheck and 1998 W 2 form, ... AMS was the employer of Johnnie Graham and merely leased him back to Third Coast.

Furthermore, the agreement between AMS and Third Coast, attached to Wood's affidavit and incorporated therein, provides that AMS assumed (1) "the right of direction and control over employees assigned to a client's worksites for administrative purposes;" (2) "the right to hire, fire, discipline, and reassign the assigned employees;" and (3) "the right of direction and control over the adoption of employment and safety policies and the management of workers' compensation claims, claim filings, and related procedures." The agreement also made reference to AMS providing "administrative co-employment."

Construing all evidence in favor of AMS, the non-movant, and allowing every reasonable inference and resolving all doubts in its favor, we conclude there is a question of fact regarding whether AMS furnished labor, pursuant to its agreement with Warm Springs, for construction of the hospital. *See Alvarez,* 967 S.W.2d at 874. By reversing the trial court's grant of Warm Springs's summary judgment, we are not holding AMS is a party entitled to a lien under the mechanic's lien statute. The statutes at issue are not directed towards persons who furnish administrative services alone. However, until the question is resolved regarding whether AMS furnished a service or furnished labor in the actual construction of the hospital, it cannot be determined whether the mechanic's lien statute applies in this instance. Thus, Warm Springs is prevented from recovery under either its traditional or its no-evidence summary judgments on this basis.

### B. Estoppel Defense

AMS also contends there is a genuine issue of material fact as to whether AMS was estopped from asserting the lien. A defendant moving for summary judgment based on an affirmative defense has the burden to conclusively prove each element of the affirmative defense as a matter of law. *See Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). When asserting the affirmative defense of estoppel, a party must prove: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 515 (Tex.1998).

Warm Springs pleaded the affirmative defense of estoppel. It specifically asserted in its summary judgment motion, "AMS is estopped to deny it was merely a third party service for administrative payroll support." Warm Springs also contended "AMS represented in its contract that the employees in question were employees of Third Coast," and represented that it was merely a payroll service. Warm Springs alleges it relied on the belief that AMS was only providing this administrative service, and made payments as if the employees in question were Third Coast employees.

We find no explicit representations in the contract that Third Coast was the sole employer of the employees in question. We do note Roth testified that AMS told him it "was a payroll service engaged by Third Coast to perform payroll and admin-

istrative services." However, the contract provides that AMS is in the business of providing administrative co-employment for a client's designated employees, and Third Coast is in need of said administrative co-employment. The agreement also provides AMS assumed the "right to fire, hire, discipline, and reassign" the employees for administrative purposes, as well as the obligation to adopt employment and safety policies. Furthermore, we find no competent summary judgment evidence of detrimental reliance on this alleged false representation. Thus, Warm Springs has not established, as a matter of law, a false representation or concealment of material facts. Nor has it conclusively established the element of detrimental reliance. Therefore, construing all evidence in favor of AMS, we conclude there remains a fact issue as to whether AMS was estopped to deny it was only a third party service for administrative payroll support. *See Velsicol Chem. Corp.,* 956 S.W.2d at 530; *Walker,* 924 S.W.2d at 377; *Crain,* 22 S.W.3d at 59.

## C. Payment Defense

■ AMS also contends there is a genuine issue of material fact as to whether a portion of its lien amount is barred by the defense of payment. Warm Springs asserts it paid $5,404.79 of the $14,155.06. It urges that its check was endorsed by AMS and was, "with AMS's permission, deposited into Third Coast's account."

Roth stated in his affidavit:

AMS told me it gave Third Coast permission for Third Coast to retain all of the funds of said check in consideration for Third Coast agreeing to make other payment.... AMS admitted to Coleman–Roth that it allowed Third Coast to receive this $5,404.79 money in full in exchange for Third Coast's agreement to provide other consideration.

Accordingly, Warm Springs argues it has established payment.

However, Wood set out in his affidavit that AMS had not been paid the total amount of $14,155.06 that it alleges is due and owing for labor provided for the project at issue. Wood testified that this amount had not been paid by Third Coast, Warm Springs, or Coleman–Roth. Furthermore, Wood's affidavit provided that AMS had not released these entities from their responsibility for payment of the obligation.

Accordingly, based on our review of the evidence supporting the motion and amended response, and construing all evidence in favor of AMS, we conclude there is an issue of fact regarding Warm Springs's defense of payment. *See Velsicol Chem. Corp.,* 956 S.W.2d at 530; *Walker,* 924 S.W.2d at 377; *Crain,* 22 S.W.3d at 59. Warm Springs has not conclusively established partial payment of the amount allegedly due.

## D. Lien Affidavit

■ Finally, Warm Springs argues, as a ground for its no-evidence summary judgment, that AMS's lien affidavit is not valid as a matter of law because it describes property in the wrong county, and does not have a legally sufficient property description. Section 53.054(a) of the Texas Property Code provides that the lien affidavit, filed in support of the lien, must contain substantially "a description, legally sufficient for identification, of the property sought to be charged with the lien." TEX. PROP.CODE ANN. § 53.054(a)(6) (Vernon 1995). In this case, the affidavit set out, in relevant part, that AMS "furnished labor for the improvement of the following described land in Brazoria County[,] Texas: Warm Springs Medical Center[,] 102 Medical Drive[,] Victoria." It identified the owner or reputed owner of the land and

improvements as "Warm Springs Rehabilitation Foundation[,] 102 Medical Drive[,] Victoria[,] Texas 77901." [7]

 "The descriptive words in an instrument should be given a liberal construction, in order that the writing may be upheld, and parol evidence is admitted to explain the descriptive words and to identify the land; but the instrument itself must contain a nucleus of description." *Palomita, Inc. v. Medley,* 747 S.W.2d 575, 576 (Tex.App.-Corpus Christi 1988, no writ) (quoting *Smith v. Sorelle,* 126 Tex. 353, 87 S.W.2d 703, 705 (1935)). The general test for determining the sufficiency of a description of the land is whether the tract can be identified with reasonable certainty. *See Zobel v. Slim,* 576 S.W.2d 362, 369 (Tex.1978).

Although AMS's lien affidavit incorrectly identified the county as Brazoria County, the affidavit substantially describes the property at issue. It sets out that the property is located at 102 Medical Drive, Victoria, Texas. It identifies the owner, Warm Springs, as being located at the same address as the land at issue. Giving a liberal construction to the descriptive words in the lien affidavit, we conclude the lien furnishes a "nucleus of description" sufficient to identify the land claimed as required by Texas law. *See Smith,* 87 S.W.2d at 705. From the description of the property, the land could be identified with reasonable certainty. *See Zobel,* 576 S.W.2d at 369. Thus, AMS's lien affidavit provides a legally sufficient property description and is valid as a matter of law.

Because we cannot affirm the summary judgment on any theory advanced in Warm Springs's traditional or no-evidence summary judgment motion, we conclude the trial court erred in granting summary judgment in favor of Warm Springs. *See*

*Rogers,* 772 S.W.2d at 79. AMS's first, third, fourth, and fifth issues are sustained.

## V. CONCLUSION

Accordingly, we reverse and remand this cause to the trial court for further proceedings.

---

7. We also note the lien was filed in Victoria County, Texas.