NUMBER 13-01-821-CV
 
COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS
 
CORPUS CHRISTI - EDINBURG


 

ADVANCE'D TEMPORARIES, INC.,                        Appellant,

v.

RELIANCE SURETY COMPANY, CORPUS 
CHRISTI CROSSWINDS APARTMENTS, LTD.,
CESAR GONZALEZ, INDIVIDUALLY AND 
D/B/A GONZALEZ CONSTRUCTION,                      Appellees.



On appeal from the 28th District Court
of Nueces County, Texas.



O P I N I O N

Before Justices Yañez, Castillo, and Garza

Opinion by Justice Castillo

         This is a mechanic's lien case. Advance'd Temporaries, Inc., a temporary
employment agency, challenges the trial court's legal conclusion that Advance'd has
no standing to assert lien rights under chapter 53 of the Texas Property Code. The
issue is one of first impression in Texas. We reverse and remand.  
I. Background Facts
         Advance'd filed suit against Reliance National Indemnity Company ("Reliance"),



Corpus Christi Crosswinds Apartments ("Crosswinds"), and Cesar Gonzalez, d/b/a
Gonzalez Construction ("Gonzalez"), seeking $208,219.56 in damages arising out of
contracts associated with an apartment construction project. Reliance filed a
counterclaim seeking indemnity against Gonzales. L & T, J.V. ("Lamar") intervened
and brought causes of action against Gonzalez and Advance'd. Advance'd added
causes of action against Lamar. Gonzalez brought cross-claims against Lamar. 
           In August of 1999, construction began on a building project known as the
Corpus Christi Crosswinds Apartments. Lamar, Crosswind's general contractor,
entered into three subcontracts with Gonzalez: (1) a $450,000 contract for framing
labor; (2) a $205,000 contract for drywall installation; and (3) a $30,150.75 contract
for roofing labor. Crosswind's general contract with Lamar required it to post a
payment bond, with Reliance as surety, in the amount of $6,305,000, which was the
total contract price. On November 10, 1999, Advance'd contracted with Gonzalez to
provide temporary employees for Gonzalez's use in performing its subcontract with
Lamar on the Crosswinds project. 
         Accordingly, Advance'd recruited, hired, and provided to Gonzalez for the
Crosswinds project general laborers, carpenter's helpers, and carpenters. Between
November 15, 1999 and February 11, 2000, Advance'd qualified the workers by
verifying legal documentation, driver's licenses, social security cards, and federal
employment forms. Advance'd hired the workers as its employees and carried their
worker's compensation, unemployment insurance, and general liability insurance. 
Advance'd invoiced Gonzalez weekly, paid all of the supplied employees, and made 
all proper payroll deductions. At times, more than one hundred Advance'd workers
labored at Crosswinds under Gonzalez's supervision. 
         The relationship between Lamar and Gonzalez deteriorated. Gonzalez's work
at Crosswinds abruptly ended on February 12, 2000.


 On termination, Lamar paid
Gonzalez for all outstanding work. Gonzalez paid Advance'd $63,210.67. A
$208,219.56 outstanding balance remained unpaid. 
         Advance'd then asserted a claim against the payment bond but was
unsuccessful in collecting on the bond. It filed suit for the outstanding balance. 
Following a bench trial, the court rendered judgment in full against Gonzalez in favor
of Advance'd but denied Advance'd judgment against Crosswinds, Lamar, and
Reliance. Following the bench trial, the trial court signed the final judgment on
September 4, 2001. This appeal ensued. 
         In its second issue, Advance'd challenges the trial court's conclusion of law that
Advance'd "is not a person entitled to the benefits of the mechanic's lien statutes." 
Advance'd contends it is entitled to recover against the payment bond because, by
virtue of its contract with Gonzalez, a subcontractor, it falls squarely within chapter 53
of the property code as a provider of labor in the direct prosecution of the work. 
Lamar and Reliance assert that the services provided by Advance'd, as a temporary
employment agency, were payroll or administrative services and are not in the nature
of "labor" or "work" as contemplated by the property code. Specifically, Lamar and
Reliance argue, none of the services Advance'd provided was "labor for construction
or repair." Therefore, they conclude, Advance'd is not entitled to a lien or judgment
against the payment bond. 
II. ANALYSIS
A. Standard of Review
         We review a trial court's challenged conclusions of law as legal questions. BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); Jackson v.
Kincaid, 122 S.W.3d 440, 445 (Tex. App.–Corpus Christi 2003, pet. filed). Thus, we
review de novo a trial court's application of the law to the facts. In other words, we
determine the correctness of the trial court's legal conclusions. BMC Software,
83 S.W.3d at 794. We are not obligated to give any particular deference to those
conclusions. Pegasus Energy Group v. Cheyenne Petroleum Co., 3 S.W.3d 112, 121
(Tex. App.–Corpus Christi 1999, pet. denied). As the final arbiter of the law, we have
the power and the duty to evaluate legal determinations of the trial court
independently. Id. 
B. Applicable Law 
         In Texas, the law recognizes two forms of mechanic's liens: constitutional and
statutory. The most common, applicable here, is found in chapter 53 of the Texas
Property Code. Section 53.021 states:
(a) A person has a lien if:
(1)the person labors, specially fabricates material, or furnishes
labor or materials for construction or repair in this state of:
 
(A)a house, building or improvement;
 
(B)a levee or embankment to be erected for the
reclamation of overflow land along a river or creek; or
 
(C)a railroad; and
 
(2)the person labors, specially fabricates the material, or
furnishes the labor or materials under or by virtue of a
contract with the owner or the owner's agent, trustee,
receiver, contractor, or subcontractor. 

Tex. Prop. Code Ann. § 53.021(a)(1), (a)(2) (Vernon Supp. 2004). The purpose of the
statutory mechanic's lien is to protect laborers and materialmen who come within its
terms for labor and materials consumed in the construction of improvements to real
property. South Coast Supply Co. v. A & M Operating Co. (In re A & M Operating
Co.), 182 B.R. 986, 991 (Bankr. D. Tex. 1993). No protection is afforded those who
labor to produce or repair chattels. Id. A subcontractor in Texas is entitled to a lien
when furnishing labor or materials for construction or repair of a building under or by
virtue of a contract with the owner or the owner's subcontractor. Tex. Prop. Code
Ann. § 53.021(a)(1)(A), (a)(2) (Vernon Supp. 2004). However, the statute is not
designed to protect only subcontractors. Rather, the supreme court has held that "the
mechanic's and materialman's lien statutes of this State will be liberally construed for
the purpose of protecting laborers and materialmen." Page v. Structural Wood
Components, 102 S.W.3d 720, 723 n.3 (Tex. 2003) (quoting First Nat'l Bank v.
Whirlpool Corp., 517 S.W.2d 262, 269 (Tex. 1974)). 
         The usual building contract imposes the duty to pay for furnished labor and
materials primarily on the contractor. Wilson v. Sherwin-Williams Paint Co.,
217 S.W. 372, 372 (Tex. 1919). The contractor selects the subcontractor. If loss
must fall somewhere (either on the materialman, owner, or contractor) when a
subcontractor fails to perform an obligation, it should fall on the contractor, who
should be supervising the subcontractor's activities. Id. A materialman's right to
recover is not dependent on the status of the accounts between the general contractor
and the subcontractor. See Campbell Bros., Inc. v. Gen. Elec. Supply Co.,
383 S.W.2d 61, 64 (Tex. Civ. App.–Dallas 1964, writ ref'd n.r.e.); see also John F.
Buckner & Sons v. Ark. Fuel Oil Corp., 301 S.W.2d 325, 329 (Tex. Civ.
App.–Waco 1957, no writ). Similarly, neither should the status of accounts determine
the rights of one who furnished labor. See Campbell Bros., Inc., 383 S.W.2d at 64;
see also John F. Buckner & Sons, 301 S.W.2d at 329. To do so would deprive those
furnishing labor of substantial and certain benefits that the lien statutes are designed
to provide. See Sherwin-Williams Paint Co., 217 S.W. at 376. 
         Chapter 53 defines "labor" is as "labor used in the direct prosecution of the
work." Tex. Prop. Code Ann. § 53.021(3) (Vernon Supp. 2004). "Work" is "any part
of construction or repair performed under an original contract." Tex. Prop. Code
Ann. § 53.021, (14) (Vernon Supp. 2004). To construe the statute as Lamar and
Reliance propose and require every lien claimant to engage in the business of
construction is contrary to the legislature's intent to construe the lien statute liberally
for the purpose of protecting laborers and materialmen. See Page, 102 S.W.3d
at 723 n.3. Accordingly, we hold that chapter 53 of the property code affords
protection to those who "furnish labor" as well as those who actually labor on a
construction project in Texas. 
         However, we conclude that not every arrangement will establish that a
temporary employment agency "furnishes labor" as defined by chapter 53. For
instance, a temporary employment agency may contract with a construction company
to provide only administrative services for the contractor's employees and not labor
engaged in direct prosecution of the work. The California Court of Appeals has
addressed just this issue. See Contractors Labor Pool, Inc. v. Westway Contractors,
Inc., 61 Cal. Rptr. 2d 715, 722-23 (1997). The plaintiff, a corporation in the business
of furnishing skilled and unskilled temporary workers to construction contractors,
sought recovery of damages for breach of contract and to assert lien rights on a
payment bond. The court stated:
[T]he legal status of an employer of laborers furnished to a work of
improvement is the crucial factor which distinguishes a person who
"furnishes" such laborers to the project, and is thus entitled to lien rights,
from a person who merely organizes the work force, performs
administrative functions, advances wages, or does all three on behalf of
another, and is consequently not entitled to lien rights.

Id. The court further stated that "an entity which takes upon itself the legal
responsibilities of an employer is entitled to a mechanic's lien and related remedies if
it furnishes the labor of its employees to a work of improvement, but one who does
not assume those legal responsibilities is not." Id. The court affirmed the trial court's
judgment entitling the corporation in the business of furnishing temporary construction
workers mechanic lien rights on the payment bond. Id. 
         This Court also addressed a similar question on an appeal from a
summary judgment. See AMS Constr. Co., Inc. v. Warm Springs Rehab. Found., Inc.
94 S.W.3d 152, 161 (Tex. App.–Corpus Christi 2002, rule 53.7(F) mot. for extension
of time filed). There, AMS Construction and Third Coast entered into an agreement
that AMS was to furnish labor to Third Coast for the construction of a hospital. Id.
at 155. Third Coast was to pay AMS the invoice price of the labor furnished. Id. 
Warm Springs contended AMS only provided administrative services for Third Coast,
specifically payroll services, and was not entitled to a lien as a matter of law. Id. We
held that whether AMS "furnished labor" for chapter 53 lien purposes is a question of
fact. Id. at 161. 
         Here, Advance'd is a temporary employment agency, not in the construction
business itself, that provides temporary construction workers under a contractual
arrangement analogous to the agreement at issue in Warm Springs. Advance'd
contracted with Gonzalez to provide the necessary labor to enable Gonzalez to fulfill
its contractual duties to Lamar. Therefore, ultimately, the nature of the arrangement
among Advance'd, the temporary workers it supplied, and Gonzalez is a question of
fact. See id. 
         We have reviewed relevant decisions in other jurisdictions to develop factors to
consider in determining if Advance'd furnished labor in direct prosecution of work on
the Crosswinds construction project. Those factors include: (1) the temporary
employment agency's involvement in selecting and screening the workers for hire;
(2) the use by the agency of its own criteria for hiring the workers; (3) affirmative
representations by the agency to the workers that it is their employer; (4) the nature
of documentation exchanged between the workers and the agency at the start of the
working relationship; (5) the agency's involvement in training, supervising, and
disciplining the workers and otherwise retaining control over the workers or directing
their behavior; (6) whether the agency rather than the contractor determined which
workers could be terminated; and (7) whether the agency withheld workers rather
than services on nonpayment by the contractor. See, e.g., Contractors Labor Pool,
61 Cal. Rptr. 2d at 722; see also Tri-State Empl. Servs. v. Mountbatten Sur. Co.,
99 N.Y.2d 476, 477-78 (2003) (adopting Contractors Labor Pool multi-factor test to
determine right of agency to which contractor outsourced its payroll and human
resources responsibilities to assert lien rights on payment bond). 
C. Application of the Law to the Facts
         Here, the record shows that Advance'd recruited carpenters and general laborers
to work for Gonzalez on the construction project. The record is not clear as to
whether Advance'd used its own hiring criteria, if any, in making employment
decisions. However, Advance'd did qualify the workers by verifying legal
documentation, driver's licenses, social security cards, and federal employment forms. 
The record is devoid of evidence of any screening, qualifying, or hiring decisions
undertaken by Gonzalez. Further, Advance'd recruited and hired all workers as its own
employees and provided all worker's compensation, unemployment insurance, and
general liability insurance. Finally, all workers hired by Advance'd to work for Gonzalez
received paychecks from Advance'd, and Advance'd made all proper payroll
deductions.


 On these facts, we conclude that the trial court did not reach a correct
legal conclusion. See BMC Software, 83 S.W.3d at 794. Therefore, we hold that
Advance'd "furnished labor in direct prosecution of the work" on the Crosswinds
construction project pursuant to section 53 of the Texas Property Code. See Tex.
Prop. Code Ann. § 53.021 (3), (14) (Vernon Supp. 2004). We sustain Advance'd's
second issue. 
III. CONCLUSION
         Our disposition of the second issue compels reversal of the trial court's
judgment. Accordingly, we do not address the remaining issues raised by Advance'd.


 
See Tex. R. App. P. 47.1. Accordingly, we reverse the judgment of the trial court and
remand for proceedings consistent with this opinion. 
 
                                                                        ERRLINDA CASTILLO
                                                                        Justice
Opinion delivered and filed
this 22nd day of July, 2004.