NUMBER 13-05-257-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


KIM WILLIS, Appellant,


v.
 


VICTOR KIMMEL, Appellee.

 


On appeal from the 151st District Court 


of Harris County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Benavides


Memorandum Opinion by Justice Rodriguez



 This is an appeal from a no-evidence summary judgment entered against
appellant, Kim Willis, and in favor of appellee, Victor Kimmel. By five issues, Willis
contends material fact issues remain on all claims. We affirm, in part, and reverse and
remand, in part.

I. Background


 Willis filed suit against Kimmel for defamation, intentional infliction of emotional
distress, negligence, and exemplary damages alleging Kimmel had falsely accused her
of forging his signature on a check. Kimmel filed a no-evidence motion for summary
judgment asserting that Willis provided no evidence for at least one or more elements
of each claim. Willis filed a response supported by her affidavit with exhibits. Kimmel
replied and objected to Willis's evidence. The trial court did not rule on Kimmel's
objections. Considering the no-evidence motion for summary judgment, the response,
the reply, and the objections, the trial court granted Kimmel's no-evidence motion for
summary judgment. This appeal ensued. (1)

II. Summary Judgment Evidence

 On appeal, Kimmel generally contends that Willis's affidavit is inadmissible
because her conclusory statements provide no support for her contentions and
represent no summary judgment proof. (2) A conclusory statement "is one that does not
provide the underlying facts to support the conclusion." See Rizkallah v. Conner, 952
S.W.2d 580, 587 (Tex. App.-Houston [1st Dist.] 1997, no writ) (citing Ryland Group,
Inc. v. Hood, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam)); see AMS Constr. Co.
v. Warm Springs Rehab. Found., 94 S.W.3d 152, 157 (Tex. App.-Corpus Christi
2002, no pet.). "An affidavit that is conclusory is substantively defective," and such
objections may be raised for the first time on appeal. Brown v. Brown, 145 S.W.3d
745, 751 (Tex. App.-Dallas 2004, pet. denied); AMS, 94 S.W.3d at 157. Such
defects are not waived by failing to obtain a ruling on objections in the trial court. 
Brown, 145 S.W.3d at 751. Thus, in this case, Kimmel's complaints regarding
conclusory statements are properly before this Court, and we will address his
challenge to the summary judgment evidence before we address the merits of this
appeal.

A. Willis's Affidavit and Exhibits

 Willis supported her response to Kimmel's no-evidence motion for summary
judgment with her four-page affidavit and accompanying exhibits. The exhibits
included a copy of the check at issue, copies of two cover letters from Kimmel's
attorney to Chase Bank (the Bank) enclosing bank forms signed by Kimmel, and a copy
of an unsigned letter from the Bank addressed to Kimmel.

 In her affidavit, Willis stated that she was competent to make the affidavit and
had personal knowledge of the facts and events stated therein. Willis related that she
and Kimmel had a relationship where they saw each other frequently over the course
of four years beginning in 1998. They shared concerns regarding their relationships
with their children. Kimmel offered to help Willis financially. Willis, a single parent,
accepted. Kimmel gave Willis money in the form of checks or cash. Willis considered
the money gifts, not loans.

 According to her affidavit, on September 2, 2002, Kimmel wrote a $2200 check
on his account at the Bank where Willis was employed. Willis stated that Kimmel
signed the check and that she cashed it at the Bank. Shortly thereafter, the Bank
notified Willis that it was informed by Kimmel that Willis had forged his signature on
the check. Willis affied that Kimmel's accusations that she committed a criminal
offense and forged his signature were false.

 The Bank froze Willis's accounts. Management personnel at the Bank
interviewed Willis regarding the allegations and told her she would be fired if the
allegations were true. Willis described how she was affected emotionally, mentally,
and physically. She also explained that her daily routine was interrupted and that she
had financial concerns because she did not have access to her bank accounts.

 In her affidavit, Willis stated that approximately four months later Kimmel
admitted to the Bank that the signature on the check was his. She also stated that
when Kimmel made his allegation he knew the information was false because he had
signed the check and delivered it to her, like a number of other checks he had given
her during the course of their relationship. Finally, Willis stated that when she asked
Kimmel why he had lied about her, he alluded to family reasons saying that "he had
to do what he had to do."

 Attached to her affidavit were cover letters from Kimmel's attorney to the Bank. 
Each letter enclosed a completed bank form signed by Kimmel. Attached to the
October 3, 2002 cover letter was the Bank's fraud management services statement
of fact form. On the form, Kimmel stated that the check did not bear his signature and
that Willis completed it, made it payable to herself in the amount of $2200, and forged
his signature on the check. Kimmel indicated that the check was prepared and signed
without his knowledge and consent. On a Bank affidavit form attached to a November
1, 2002 cover letter from Kimmel's attorney, Kimmel described the check at issue as
having an unauthorized signature. In addition, Willis attached a copy of a January 17,
2003 unsigned letter from the Bank to Kimmel. In the letter, the Bank explained that
because Kimmel had later informed the Bank that the signature on the check was his,
it was denying his claim.

B. Kimmel's Challenges to the Evidence

 In his no-evidence motion for summary judgment, Kimmel specifically
complained that the following statements were conclusory:

 1. Mr. Kimmel accused me of having committed a criminal offense;

 

 2. At the time Mr. Kimmel made his allegation that I had committed
the criminal offense of forgery of his check he knew that this
information was false;

 

 3. I recall shortly after I was informed by Chase Bank of Mr.
Kimmel's allegations against me asking Mr. Kimmel why he had
lied about me. Mr. Kimmel simply responded by alluding to family
reasons that he had to do what he had to do;


 4. On January 17, 2003, Mr. Kimmel admitted in a telephone
conversation with Chase Bank fraud investigators that the
signature on the check no. 16636 payable to me was his
signature; and


 5. I was emotionally devastated. I was mentally tormented. I was
gravely depressed to have been falsely accused and to have this
accusation reported to my employer. I became physically ill from
sleepless nights, worry, fret, anxiety, irritability, and massive
headaches, all as a result of the untrue allegations made against
me by Mr. Kimmel. My daily routine of life was severely
interrupted. Moreover, I was deeply troubled by my not having
access to my bank accounts to cover my living expenses and the
ability to take care of and provide for my daughter.

On appeal, Kimmel complains of no other conclusory statements. Moreover, no
objections were raised regarding the substance of the exhibits to Willis's affidavit. We
will, therefore, limit our review to the five statements or groups of statements that
were specifically complained of in his motion.

1. Accusations of Forgery

 In the first and second statements set out above, Willis states that Kimmel
accused her of forgery, a criminal offense. See Tex. Pen. Code Ann. § 32.21(b)
(Vernon Supp. 2006). These statements are supported by the Bank's fraud
management services statement-of-fact form attached to Willis's affidavit. On that
form, Kimmel, himself, explained that "[Willis] completed this check making it payable
to herself for the amount of $2,200.00 and forged [his] signature on same." 
Additionally, in her affidavit, Willis stated that the Bank notified her that Kimmel had
informed it that she had forged his signature on the check. Also attached to Willis's
affidavit was the October 3, 2002 letter to the Bank from Kimmel's attorney,
explaining that she was returning the statement of fact that the Bank had asked
Kimmel to complete "when he reported a forged check."


3. Knowing Information Given Was False

 In the second and third statements, the conclusion that Kimmel knew the
information he gave the Bank was false and lied about Willis is supported by the
Bank's January letter. In that letter, the Bank stated that Kimmel later informed it that
he had signed the check. This statement is also supported by the following
unobjected-to statements that appear in Willis's affidavit:

 Mr. Kimmel knew that this information was false because he knew that
he had given me the check, which he had signed, during one of our
meetings at his home on or about September 2, 2002. This check was
like a number of other checks he had given me during the course of our
relationship.

2. Kimmel's Signature

 In the fourth statement, Kimmel challenges Willis's statement that "Kimmel
admitted . . . that the signature on the check . . . was his signature" as conclusory. 
This statement is supported by the underlying fact that "[d]uring the course of [its]
investigation, [Kimmel] informed [the Bank] that the signature on the Check was [his]
signature." This unchallenged statement appears in the Bank's January 17, 2003
letter to Kimmel. Willis attached this letter to her affidavit.

 Accordingly, we conclude Willis provided underlying facts in her affidavit and
its exhibits to support the alleged conclusions in the first four groups of statements set
out above. These portions of the evidence are properly before the Court. See
Rizkallah, 952 S.W.2d at 587.


4. Injuries

 The fifth set of objected-to statements identified above involve Willis's alleged
injuries. In her petition, Willis alleged damages in the form of public humiliation,
ridicule, mental anguish, and severe emotional distress. In her affidavit, Willis
supported these allegations by stating that she was emotionally devastated, mentally
tormented, and gravely depressed. These conclusory phrases regarding Willis's
emotions, however, are not supported by underlying facts. See Rizkallah, 952 S.W.2d
at 587; cf. Gonzalez v. Temple-Inland Mortg. Corp., 28 S.W.3d 622, 626 (Tex.
App.-San Antonio 2002, no pet.) (holding statements in affidavit were too conclusory
to defeat a no-evidence motion for summary judgment on mental anguish damages);
El Dorado Motors, Inc. v. Koch, 168 S.W.3d 360, 367 (Tex. App.-Dallas 2005, no
pet.) (affirming no-evidence summary judgment rendered on damages ground because
expert deposition testimony on lost profits failed to show basis of opinions and
conclusions). Only her statement that she was deeply troubled is arguably supported
by the fact that she did not have access to her bank accounts to cover living expenses
and take care of her daughter.

 Willis also affied that she was physically ill from sleepless nights, worry, fret,
anxiety, irritability, and massive headaches and that her daily routine of life was
severely interrupted. Arguably, the statement that she was physically ill is based on
her insomnia and massive headaches and possibly her anxiety and irritability. 
However, "worry" and "fret" are statements not supported by underlying facts in this
instance.

 Therefore, except for the statements that she was deeply troubled and that she
was physically ill is based on her insomnia and massive headaches, and possibly her
anxiety and irritability, the statements from Willis's affidavit, identified as number 5
above, do not constitute competent summary judgment evidence. We will not
consider those portions of her affidavit. Conclusory statements, however, do not
negate the entire affidavit. See AMS, 94 S.W.3d at 158 (citing Muhm v. Davis, 580
S.W.2d 98, 102 (Tex. Civ. App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.)). 
Therefore, we will consider the remaining summary judgment evidence filed in support
of Willis's response.

III. Merits of the Appeal

 By five issues, Willis contends that there are material issues of fact regarding
her claims of slander, libel, intentional infliction of emotional distress, negligence, and 
for exemplary damages.

A. Standard of Review

 A no-evidence motion for summary judgment asserts there is no evidence of one
or more essential elements of claims upon which the opposing party would have the
burden of proof at trial. Tex. R. Civ. P. 1661(i). The motion must specify the elements
as to which there is no evidence. Id.; Patino v. Complete Tire, Inc., 158 S.W.3d 655,
659-60 (Tex. App.-Dallas 2005, pet. denied).

 A summary judgment motion pursuant to Tex. R. Civ. P. 1661(i) is
essentially a motion for a pretrial directed verdict. See Merrell Dow
Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). Once such
a motion is filed, the burden shifts to the nonmoving party to present
evidence raising an issue of material fact as to the elements specified in
the motion. Id.; W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex.
2005). We review the evidence presented by the motion and response
in the light most favorable to the party against whom the summary
judgment was rendered, crediting evidence favorable to that party if
reasonable jurors could, and disregarding contrary evidence unless
reasonable jurors could not. See City of Keller v. Wilson, 168 S.W.3d
802, 827 (Tex. 2005); Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d
193, 208 (Tex. 2002).


Mack Trucks v. Tame, 206 S.W.3d 572, 581-82 (Tex. 2006).

 A no-evidence motion for summary judgment is properly granted only if the
non-movant fails to bring forth more than a scintilla of probative evidence raising a
genuine issue of material fact as to the challenged element of the claims. See Tex. R.
Civ. P. 1661(i); AMS, 94 S.W.3d at 159. "More than a scintilla of evidence exists
when the evidence rises to a level that would enable reasonable and fair-minded people
to differ in their conclusions." In re Estate of Flores, 76 S.W.3d 624, 629 (Tex.
App.-Corpus Christi 2002, no pet.) (citing Havner, 953 S.W.2d at 711). "Less than
a scintilla of evidence exists when the evidence is so weak as to do no more than
create a mere surmise or suspicion of a fact." Id. (citing Kindred v. Con/Chem, Inc.,
650 S.W.2d 61, 63 (Tex. 1983)). When a trial court does not state the basis for its
decision in its summary judgment order, as in this case, the appellate court must
uphold the order if any of the grounds advanced in the motion are meritorious. Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

B. Slander and Libel

 In her first two issues, Willis contends that the trial court erred in granting the
no-evidence summary judgment on her slander and libel claims because material fact
issues remain on all elements of the defamation claims. We agree. 

 In both slander and libel the issues are whether the utterance was made, if it
was false, if it damaged the complainant, and if the speaker had any privilege. Peshak
v. Greer, 13 S.W.3d 421, 426 (Tex. App.-Corpus Christi 2000, no pet.) (citing
Restatement (Second) of Torts § 558 (1977)); see Tex. Civ. Prac. & Rem. Code Ann.
§ 73.001 (Vernon 2005) (defining libel, in relevant part, as (1) a defamation expressed
in writing that (2) tends to injure a living person's reputation and (3) thereby expose
the person to public hatred, contempt or ridicule, or financial injury or to impeach any
person's honesty, integrity, virtue or reputation); Randall's Food Mkts., Inc. v.
Johnson, 891 S.W.2d 640, 646 (Tex. 1995) (providing that slander is (1) a
defamatory statement that (2) is published to a third person or orally communicated
(3) without legal justification or excuse). In his no-evidence motion for summary
judgment, Kimmel specifically asserted that there was no evidence (1) that a
defamatory statement was made about Willis, (2) that it was communicated to a third
person, (3) that it tended to injure Willis, and (4) that it was made without legal
excuse. A false statement will typically be classified as defamatory per se if it charges
a person with the commission of a crime. Leyendecker & Assoc., Inc. v. Wechter,
683 S.W.2d 369, 374 (Tex. 1984). 

1. False Statement 

Orally Communicated or Published to Third Person


 First, in her summary judgment evidence, Willis affied that the Bank notified her
that Kimmel informed it that she had forged his signature on a check. In an October
3, 2002 letter to the Bank, Kimmel's attorney also noted that Kimmel had reported the
forged check to the Bank. Moreover, enclosed with the letter was the Bank's
statement-of-fact form signed by Kimmel. In that written statement of fact Kimmel
informed the Bank that Willis had forged his signature on the check and that the check
was prepared and signed without his knowledge. The cover letter and completed
statement-of-fact form were attached to Willis's affidavit. Additionally, as set out in
the Bank's January 17th letter attached to Willis's affidavit, during the course of the
Bank's investigation Kimmel admitted to the Bank that the signature on the check was
his.

 We conclude this evidence would enable reasonable and fair-minded people to
differ in their conclusions regarding whether Kimmel communicated a defamatory oral
statement that was false to a third party alleging that Willis had forged Kimmel's name
on a check and whether Kimmel also expressed it in writing. See In re Estate of
Flores, 76 S.W.3d at 629 (citing Havner, 953 S.W.2d at 711). Thus, more than a
scintilla of evidence exists on this element. See id.

2. Defamatory Statement Tended to Injure Willis

 In this case, Kimmel charged Willis with forgery. That statement is classified
as defamatory per se. See Leyendecker, 683 S.W.2d at 374. Because statements
that are defamatory per se are actionable without proof of injury, no such proof was
required. See Bentley v. Bunton, 94 S.W.3d 561, 605 (Tex. 2002); see also Knox v.
Taylor, 992 S.W.2d 40, 50 (Tex. App.-Houston [14th Dist.] 1999, no pet.) (providing
that a statement is considered defamatory per se if words are so obviously hurtful to
plaintiff's reputation that they require no proof of their injurious character to make
them actionable).

3. Defamatory Statement Made Without Legal Excuse

 Finally, Willis asserts that Kimmel's statement was made without legal excuse. 
She contends that the lack of legal excuse is evidenced by Kimmel's admission that
the signature on the subject check was his. In response, Kimmel argues that the trial
court properly granted him summary judgment because there was no evidence that
would negate his claim of qualified privilege under section 4.406 of the Texas Business
and Commerce Code. See Tex. Bus. & Comm. Code Ann. § 4.406 (Vernon 2002)
(requiring a bank account holder to act with "reasonable promptness in examining the
statement or the items to determine whether any payment was not authorized . . .
because a purported signature by or on behalf of the customer was not authorized"). 
Kimmel asserted this qualified privilege as an affirmative defense to Willis's defamation
claim. See Hanssen v. Our Redeemer Lutheran Church, 938 S.W.2d 85, 92 (Tex.
App.-Dallas 1996, writ denied) ("Legal excuse includes the defense of qualified
privilege.").

 However, Kimmel was not entitled to a no-evidence summary judgment on his
qualified privilege affirmative defense. See Keszler v. Mem'l Med. Ctr., 105 S.W.3d
122, 128 (Tex. App.-Corpus Christi 2003, no pet.) (citing Tex. R. Civ. P. 1661(i)
(providing that a party may move for a no-evidence summary judgment on claims or
defenses on which an adverse party has the burden of proof)); see Battin v.
Samaniego, 23 S.W.3d 183, 185-86 (Tex. App.-El Paso 2000, pet. denied) (holding
that the defendant was not entitled to a no-evidence summary judgment on its own
affirmative defense). "Rather its application is limited to an essential element of a
claim or defense on which the adverse party would have the burden of proof at trial."
Id. Because a no-evidence motion for summary judgment places the burden on the
non-movant to present enough evidence to be entitled to a trial, a party moving for
summary judgment on an affirmative defense cannot bring a no-evidence motion for
summary judgment on that defense. Quanaim v. Frasco Rest. & Catering, 17 S.W.3d
30, 43 (Tex. App.-Houston [14th Dist.] 2000, pet. denied).

 In this no-evidence summary judgment proceeding, Willis is under no obligation
to bring forth proof against Kimmel's affirmative defense. Rather, it is Kimmel's
burden to establish all elements of the defense as a matter of law. Kimmel's summary
judgment cannot be sustained on this ground. (3)

 Therefore, reviewing the evidence in the light most favorable to Willis, crediting
evidence favorable to Willis if reasonable jurors could, and disregarding contrary
evidence unless reasonable jurors could not, see Mack Trucks, 206 S.W.3d at 581-82,
we conclude that Willis's affidavit with supporting exhibits provided more than a
scintilla of evidence to establish that Kimmel orally, and through correspondence,
communicated to the Bank that Willis forged one of his checks and that the statement
was false. See Tex. R. Civ. P. 1661(i); AMS, 94 S.W.3d at 159. Determining the
statement was defamatory per se, no evidence of injuries was needed. Moreover,
Kimmel was not entitled to a no-evidence summary judgment on his own affirmative
defense. Therefore, we conclude that the trial court erred in granting Kimmel's no-evidence motion for summary judgment on Willis's defamation claims. We sustain
issues one and two.

B. Exemplary Damages Based on Malice

 In his no-evidence motion for summary judgment, Kimmel claimed that Willis did
not produce clear and convincing evidence that he had any malicious intent to injure
or harm Willis at any time, an intent that would support Willis's claim for exemplary
damages. However, when this suit was filed on October 18, 2002, malice was
defined, in the alternative, as follows:

 (A) a specific intent by the defendant to cause substantial injury to the
claimant; or

 

 (B) an act or omission:


 (i) which when viewed objectively from the standpoint of the actor at
the time of its occurrence involves an extreme degree of risk, considering
the probability and magnitude of the potential harm to others; and


 (ii) of which the actor has actual, subjective awareness of the risk
involved, but nevertheless proceeds with conscious indifference to the
rights, safety, or welfare of others.


Act of April 11, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 109. (4) 
Kimmel's no-evidence motion did not challenge the elements of section B. Yet, in her
first amended original petition, Willis asserted that "Kimmel's conduct . . . amounts to
gross negligence and evidences a conscious indifference to the rights and welfare of
Willis." It is arguable that Willis could establish malice premised on section B above. 
We conclude, therefore, that the trial court erred in granting Kimmel's no-evidence
motion for summary judgment on Willis's claim for exemplary damages. The fifth
issue is sustained.C. Intentional Infliction of Emotional Distress

 By her third issue, Willis contends that there is a material fact issue on her
intentional infliction of emotional distress claim that prevented the trial court from
granting Kimmel's no-evidence motion for summary judgment, specifically that she 
she suffered severe emotional distress, the fourth element of this cause of action. (5) 
See Tex. Farm Bureau Mut. Ins. Cas. v. Sears, 84 S.W.3d 604, 710 (Tex. 2002)
(setting out the elements of intentional infliction of emotional distress as (1) the
defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme
and outrageous; (3) the defendant's conduct proximately caused the plaintiff's
emotional distress; and (4) the emotional distress suffered by the plaintiff was severe).
 We have already determined that Willis's summary judgment evidence, except
for the statements that she was deeply troubled and that she was physically ill based
on her insomnia and massive headaches, and possibly her anxiety and irritability,
provided only conclusory statements regarding her injuries, statements which are not
properly before this Court. Viewing the remaining evidence regarding emotional
distress in the light most favorable to Willis and disregarding all contrary evidence and
inferences, we cannot conclude that Willis brought forth more than a scintilla of
probative evidence that raised a genuine issue of material fact that she suffered severe
emotional distress. See GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 618 (setting
out that severe emotional distress is "distress that is so severe that no reasonable
person could be expected to endure it"). We cannot conclude that the alleged
emotional distress supported by the evidence rises to the level that reasonable minds
could disagree whether it was extreme and outrageous. See Tex. R. Civ. P. 1661(i). 
Willis's third issue is overruled.

D. Negligence

 In her fourth issue, Willis contends that the trial court's judgment on Kimmel's
no-evidence motion for summary judgment on her negligence claims was improper. 
In accordance with rule 38.1(h) of the Texas Rules of Appellate Procedure, we will
only consider contentions that are supported by clear and concise arguments with
appropriate citations to authorities and to the record. Tex. R. App. P. 38.1(h). Willis
neither develops this contention nor provides citations to the record or to authority in
support of this contention. Because this issue is inadequately briefed, we overrule
Willis's fourth issue.

IV. Conclusion

 The judgment of the trial court is affirmed, in part, as to Willis's intentional
infliction of emotional distress and negligence claims and is reversed and remanded,
in part, as to her defamation and exemplary damage claims, for proceedings consistent
with this opinion.


 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and 

filed this 7th day of June, 2007.



1. Willis's claims were severed from a remaining counterclaim, and the notice of appeal was filed in the
severed action.
2. Kimmel complains of factual conclusions not legal conclusions.
3. In his second amended original answer, Kimmel also pleaded that "such statements were privileged,
including . . . common interest privilege." See Hanssen v. Our Redeemer Lutheran Church, 938 S.W.2d
85, 92 (Tex. App.-Dallas 1996, writ denied) ("A privilege will be granted to statements that occur under
circumstances wherein any one of several persons having a common interest in a particular subject
matter may reasonably believe that facts exist that another, sharing that common interest, is entitled
to know."). In addition, Kimmel claimed a duty to report pursuant to the terms and conditions of the
account holder agreement between Kimmel and the Bank. He does not urge these matters on appeal. 
Nonetheless, the result is the same. Kimmel had the burden of proving the privileges asserted. Thus,
a no-evidence summary judgment could not be entered in Kimmel's favor on this basis.
4. "In 2003, the Legislature removed subpart (B) from the malice definition, recodifying it as the definition
of 'gross negligence.'" USA Truck, Inc. v. West, 189 S.W.3d 904, 907 (Tex. App.-Texarkana 2006,
pet. denied) (citing Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11) (Vernon Supp. 2006); see Dillard
Dep't Stores, Inc. v. Silva, 148 S.W.3d 370, 373 (Tex. 2004)) (per curiam). Because this cause of
action was filed prior to September 1, 2003, the predecessor statute applies. Act of June 2, 2003,
78th Leg., R.S., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 847, 887, 898-899 (applicable to actions
filed on or after September 1, 2003).
5. Kimmel challenged this element in his no-evidence motion for summary judgment.