

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-08-393-CV

TRINITY RIVER ESTATES, L.P.                                  APPELLANT

V.

PAT DIFONZO, ZENA DEVELOPMENT                 APPELLEES
CORPORATION, ZENA LAND
DEVELOPMENT, L.P., MARIO
SINACOLA & SONS EXCAVATING,
INC., AUSTIN BRIDGE & ROAD, L.P.,
AUSTIN BRIDGE & ROAD, INC., AND
TURNER, COLLIE & BRADEN, INC.

------------

### FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In two issues, Appellant Trinity River Estates, L.P. ("TRE") appeals the

trial court's orders granting summary judgments in favor of Appellees Pat

---

[1] *See* Tex. R. App. P. 47.4.

DiFonzo, Zena Development Corporation, and Zena Land Development, L.P. (collectively, "Developer"); Mario Sinacola & Sons Excavating, Inc.("Mario"); Austin Bridge & Road, L.P. and Austin Bridge & Road, Inc. (collectively, "Austin"); and Turner, Collie & Braden, Inc. ("Turner"). We affirm.

## II. Factual and Procedural History

The parties do not dispute the following:[2] TRE owns an undeveloped portion of land in the Trinity Estates division of the City of Benbrook. In 2000, DiFonzo, acting as President of the Zena Corporation, approached TRE and requested a drainage easement upon TRE's property for the development of Trinity Gardens—a portion of property adjacent to TRE's land. Although TRE refused DiFonzo's request, development on the Trinity Gardens project commenced. Developer hired Turner to be the engineer for the Trinity Gardens project, Mario to excavate the land, and Austin to pave the roads.

In December 2002, TRE filed suit against Trinity Gardens, L.P.; Choice Homes, Inc.; Zena GP1 LLC; Developer; Mario; Utilities, Inc. (d/b/a H & S Utility Contractors); and Austin for flooding that occurred on TRE's property in late July or early August 2002 that allegedly resulted from the Trinity Gardens development. During the suit's pendency, Choice Homes and Developer

---

[2] *See* Tex. R. App. P. 38.1(g) (declaring, "[i]n a civil case, the court will accept as true the facts stated unless another party contradicts them").

2

indicated to TRE that Turner had added a revision to the drainage plans that called for a retention pond upon the property of Trinity Gardens; that the pond was either constructed or in the process of being constructed; and that the installation of the pond should cure TRE's excess water problems. TRE dismissed the case and elected to "wait and see whether in fact such installation did cure such drainage problems."

In March 2005, TRE filed another suit against Developer, Mario, Austin, and Turner for negligent and intentional diversion of water, nuisance, trespass, and violations of the water code.[3] TRE's fourth amended petition claimed in pertinent part that:

> Based on the damage to [TRE's] property caused by [Appellees']
> development activities, [TRE] filed suit against [Appellees] in 2002.
> In a spirit of compromise, and to avoid the expense of continued
> litigation, [TRE] agreed to provide [Appellees] with the opportunity
> to rectify the situation causing the flooding of [TRE's] property.
> [TRE] agreed that it would discontinue pursuing litigation against
> [Appellees] only if and until [Appellees] took the necessary remedial
> steps to prevent the flooding onto [TRE's] property. The [r]etention
> pond which was constructed as the alternative to the easement
> which [TRE] was unwilling to sell was wholly ineffective.
> [Appellees] intended that the [r]etention pond would solve the
> flooding anticipated by the construction of the development;
> however, during periods of significant rainfall the [r]etention pond

---

[3] In later amended petitions, TRE dropped the water code causes of action as to Mario, Austin, and Turner but added causes of action for gross negligence and common law diversion of water as to all of the parties.

stands dry while [TRE's] property continues to be damaged by flooding.

In response, Developer, Turner, Mario, and Austin each filed no-evidence and traditional motions for summary judgment. The trial court granted their motions. This appeal followed.

## III. Discussion

TRE asserts in its first issue that the trial court erred by granting no-evidence summary judgments in favor of Developer and Turner as to TRE's negligence, nuisance, trespass, and gross negligence claims, and in favor of Mario and Austin as to TRE's nuisance and trespass claims. In its second issue, TRE argues that the trial court erred by granting summary judgments in favor of Developer, Turner, Mario, and Austin, as to all of TRE's claims — each moved for traditional summary judgment on the grounds of limitations and no damages.

### A. Standard of Review

Our review of a summary judgment is de novo to determine whether a party's right to prevail is established as a matter of law. Tex. R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When, as here, a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City*

4

*of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex. 2004). When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

**B. Damages**

In TRE's first issue, TRE asserts that the trial court erred by granting each Appellee's no-evidence motion for summary judgment. As a sub-issue, TRE

complains that the trial court erred by granting Turner's motion to strike TRE's summary judgment evidence.

**1. Background**

TRE alleged various causes of action below—negligent and intentional diversion of water, nuisance, trespass, violation of the water code, gross negligence, and common law diversion—and sought damages for each of its claims. In response, each Appellee filed a no-evidence motion for summary judgment, asserting, among other things, that there was no evidence of damages for any of TRE's causes of action.[4] Consequently, the burden shifted to TRE to raise a genuine issue of material fact on the damages element of each of its claims in order to avoid summary judgment. *See* Tex. R. Civ. P. 166a(I).

In an attempt to meet its burden on damages, TRE attached to its response James Ryffel's[5] and Ahmad Khammash's[6] affidavits and argued that the affidavits contained evidence of damages to support each of TRE's claims.[7]

---

[4] Each Appellee moved for no-evidence summary judgment on each element of each of TRE's causes of action.

[5] Ryffel is the sole limited partner of TRE.

[6] Khammash is a registered professional engineer in the State of Texas.

[7] We note, however, that TRE did not direct the trial court to any specific evidence within the affidavits to support its claim of damages but rather asked the trial court to "see Ryffel's and Khammash's affidavits." *See Nawas v. R & S Vending*, 920 S.W.2d 734, 737 (Tex. App.—Houston [1st

6

After a thorough review of Ryffel's affidavit, we encountered the following

pertinent portion on damages:

> In my opinion, the property of Trinity River Estates, LP has been
> damaged between $1.8 and $2.2 million dollars based upon the
> reduction in value of the overall site that has been caused by the
> inability to develop a number of lots thereon and the necessity,
> when the property is developed, to install a retaining pond.

However, after a similar review of Khammash's affidavit, although there was

evidence that might raise a fact issue as to an injury to TRE, nothing addressed

TRE's damages.[8]

---

Dist.] 1996, no writ) (stating that courts of appeals are not required to search the record without guidance from appellant to determine whether it has produced evidence raising a genuine issue of material fact on the elements challenged by appellees); *but see Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002) (holding that appellant's response, which did not connect facts to the challenged elements, was adequate for considering whether a fact issue had been raised).

[8] Khammash's affidavit stated in pertinent part:

The Trinity Gardens site prior to development was composed of approximately 23 acres covered with vegetation, mostly grass with light tree cover and two large ponds of combined volume of 650,504 cubic feet. . . . These retention ponds were completely eliminated as part of the Trinity Gardens Addition development. A much smaller (approximately 50,000 cubic feet) retention pond from which the upper half of the development area flows, was constructed. . . .

Prior to the development of the Trinity Gardens property the original rainstorm runoff coefficient of the area was approximately .3. After development the runoff coefficient of the area is .55. Therefore, the amount of runoff from any rainstorm will increase

7

Turner filed objections and a motion to strike the portion of Ryffel's affidavit pertaining to damages on the grounds that it was conclusory and that Ryffel was not an expert; it also filed a motion to strike Khammash's entire affidavit on the grounds that it was unreliable and irrelevant. The trial court sustained Turner's objections.

In support of its argument that it raised a fact issue regarding damages as to its claims against each Appellee, TRE directs our attention to Ryffel's and

---

dramatically over the entire Trinity Gardens developed area at times when there does not exist a non-saturated soil condition.

It is my opinion based upon the foregoing that the Trinity Gardens development severely reduced upstream pervious areas and eliminated the previously existing retention ponds. . . . It is my opinion that the development of the Trinity Gardens Addition has increased the cumulative volume and frequency of storm water runoff onto the property of Trinity River Estates, LP. It is my further opinion that [Turner] failed to adequately provide for this increased runoff in its engineering plans it prepared. . . . Additionally, it is my professional opinion that [Turner] knew or should have known that increased water runoff from the Trinity Garden development would adversely affect the property of Trinity River Estates, LP. Additionally, it is my professional opinion that the retention pond constructed as part of the upstream development has had no [e]ffect in mitigating the increased water runoff onto the property of Trinity River Estates, LP. Based on all of the foregoing, it is my professional opinion that [Turner] was negligent in failing to provide adequate storm water drainage plans for the development and that this negligence has resulted in substantial increased flooding to the property of Trinity River Estates, LP.

Khammash's affidavits[9] and argues that the trial court erred by granting Turner's motion to strike them from TRE's summary judgment evidence.[10] Specifically, TRE argues that Ryffel, as the sole limited partner of TRE, falls under the "Property Owner Rule" and therefore Ryffel's opinion as to the value of his property raises a fact issue as to damages. The Appellees, however, argue that Ryffel's affidavit is conclusory and therefore does not constitute competent summary judgment evidence.

---

[9] TRE also refers us to a portion of Ryffel's deposition attached to Turner's motion. TRE argues that even if the portion of Ryffel's affidavit pertaining to damages was struck by the trial court, the same evidence is contained within the summary judgment evidence proffered by Turner in its motion for summary judgment. However, in a no-evidence motion for summary judgment, the non-movant bears the burden of producing competent summary judgment evidence; therefore, in this case, TRE bore the burden of producing proper summary judgment evidence, not Turner. *See* Tex. R. Civ. P. 166a(i). Accordingly, pursuant to this rule, we have not considered the evidence attached by Turner in conjunction with its motion. *See Southtex 66 Pipeline Co., Ltd. v. Spoor*, 238 S.W.3d 538, 542 n.1 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (stating even though the movant in a no-evidence summary judgment attached evidence, the appellate court did not consider the evidence). Furthermore, even if we were to consider Ryffel's deposition testimony, it, like Ryffel's affidavit, is conclusory and therefore does not qualify as competent summary judgment evidence.

[10] Having determined that Khammash's affidavit did not include evidence of damages, we need not include it in the remaining discussion pertaining to damages.

9

### 2. Applicable Law

Affidavits supporting and opposing a motion for summary judgment must set forth facts, not legal conclusions. *See Mercer v. Daoran Corp.,* 676 S.W.2d 580, 583 (Tex. 1984); *AMS Constr. Co. v. Warm Springs Rehab. Found., Inc.*, 94 S.W.3d 152, 157 (Tex. App.—Corpus Christi 2002, no pet.). A conclusory statement is one that does not provide the underlying facts to support the conclusion, and it is insufficient to create a question of material fact to defeat summary judgment. *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 803 (Tex. 2004); *McIntyre v. Ramirez*, 109 S.W.3d 741, 749–50 (Tex. 2003). To constitute competent summary judgment evidence, the testimony must provide an explanation linking the basis of the conclusion to the facts. *Windsor v. Maxwell*, 121 S.W.3d 42, 49 (Tex. App.—Fort Worth 2003, pet. denied).

The Supreme Court of Texas has held that property owners who are familiar with the market value of their property, including real property, may testify as to their opinions regarding this value, even though they do not qualify as expert witnesses and even though they would not be allowed to testify regarding the market value of property they do not own. *See Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 669 (Tex. 1996); *Porras v. Craig*, 675 S.W.2d 503, 504–05 (Tex. 1984). The Property Owner Rule is based on the premise

that property owners ordinarily know the market value of their property and therefore have a sound basis for testifying as to its value. *See Porras*, 675 S.W.2d at 504; *State v. Berger*, 430 S.W.2d 557, 559 (Tex. Civ. App.—Waco 1968, writ ref'd n.r.e.). For a property owner to qualify as a witness, his testimony "must show that it refers to market, rather than intrinsic or some other value of the property." *Porras*, 675 S.W.2d at 504–05. This requirement is usually met if the owner testifies that he is familiar with the market value of his property. "Market value" is the price property would bring if offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no obligation to buy. *Exxon Corp. v. Middleton*, 613 S.W.2d 240, 246 (Tex. 1981).

### 3. Analysis

Assuming without deciding that the Property Owner Rule applies to Ryffel, Ryffel's affidavit is conclusory and therefore not competent summary judgment evidence that raises a fact issue as to damages.[11] *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (stating "[c]onclusory affidavits are not enough to raise fact issues"); *Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 198 (Tex. App.—Fort Worth 2006, no pet.) (stating

---

[11] Furthermore, even if we were to consider Ryffel's deposition testimony, Ryffel admits that he has had no appraisal done on the property.

11

"[a] conclusory statement is one that does not provide the underlying facts to support the conclusion").

The only testimony in Ryffel's affidavit pertaining to damages was that "Trinity River Estates, LP has been damaged between $1.8 and $2.2 million dollars based upon the reduction in value of the overall site." However, in order for an owner's testimony to qualify under the Property Owner Rule, the owner must testify as to the market value. *See Porras*, 675 S.W.2d at 504 (holding that in a suit for permanent damage to land, the measure of damages is the difference in the market value of the land immediately before and immediately after the injury). The evidence here contains no basis for Ryffel's opinion. We cannot determine from the affidavit whether the reduction in value is based on market, intrinsic, or some other value. *See id.* at 505 (stating that in order for a property owner to qualify as a witness to the damages to his property, his testimony must show that it refers to market, rather than intrinsic or some other value of the property). Therefore, because Ryffel's testimony as to damages is conclusory, and because TRE did not offer any other evidence of damages, we hold that the trial court did not err by granting Developer's, Turner's, Mario's, and Austin's no-evidence motions for summary judgment on the ground that TRE did not raise a genuine issue of material fact as to damages on each of its claims. Furthermore, because Ryffel's affidavit is

12

conclusory, we hold the trial court did not abuse its discretion by granting Turner's motion to strike. Accordingly, we overrule TRE's first issue.

Because Appellees conclusively established entitlement to judgment based on no-evidence of damages as to each of TRE's claims, we need not address TRE's remaining issue. *See* Tex. R. App. P. 47.1 (stating opinions should address only issues necessary to final disposition of appeal).

## IV. Conclusion

Having overruled TRE's dispositive issue, we affirm the trial court's judgments.

BOB MCCOY
JUSTICE

PANEL: CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED: May 28, 2009

13