COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                        NO.
2-08-393-CV

 

 

TRINITY
RIVER ESTATES, L.P.                                               APPELLANT

                                                   V.

 

PAT
DIFONZO, ZENA DEVELOPMENT                                       APPELLEES

CORPORATION, ZENA LAND 

DEVELOPMENT, L.P., MARIO

SINACOLA & SONS
EXCAVATING,

INC., AUSTIN BRIDGE &
ROAD, L.P., 

AUSTIN BRIDGE & ROAD,
INC., AND

TURNER, COLLIE &
BRADEN, INC.

 

                                              ------------

 

           FROM THE 141ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  Introduction








In two issues, Appellant Trinity River Estates,
L.P. (ATRE@)
appeals the trial court=s orders granting summary
judgments in favor of Appellees Pat DiFonzo, Zena Development Corporation, and
Zena Land Development, L.P. (collectively, ADeveloper@); Mario
Sinacola & Sons Excavating, Inc.(AMario@);
Austin Bridge & Road, L.P. and Austin Bridge & Road, Inc.
(collectively, AAustin@); and
Turner, Collie & Braden, Inc. (ATurner@).  We affirm.

                              II.  Factual and Procedural History

The parties do not dispute the following:[2]  TRE owns an undeveloped portion of land in
the Trinity Estates division of the City of Benbrook.  In 2000, DiFonzo, acting as President of the
Zena Corporation, approached TRE and requested a drainage easement upon TRE=s
property for the development of Trinity GardensCa
portion of property adjacent to TRE=s
land.  Although TRE refused DiFonzo=s
request, development on the Trinity Gardens project commenced.  Developer hired Turner to be the engineer for
the Trinity Gardens project, Mario to excavate the land, and Austin to pave the
roads.








In December 2002, TRE filed suit against Trinity
Gardens, L.P.; Choice Homes, Inc.; Zena GP1 LLC; Developer; Mario; Utilities,
Inc. (d/b/a H & S Utility Contractors); and Austin for flooding that
occurred on TRE=s property in late July or early
August 2002 that allegedly resulted from the Trinity Gardens development.  During the suit=s
pendency, Choice Homes and Developer indicated to TRE that Turner had added a
revision to the drainage plans that called for a retention pond upon the
property of Trinity Gardens; that the pond was either constructed or in the
process of being constructed; and that the installation of the pond should cure
TRE=s excess
water problems.  TRE dismissed the case
and elected to Await and see whether in fact
such installation did cure such drainage problems.@

In March 2005, TRE filed another suit against
Developer, Mario, Austin, and Turner for negligent and intentional diversion of
water, nuisance, trespass, and violations of the water code.[3]  TRE=s fourth
amended petition claimed in pertinent part that:








Based on the damage to
[TRE=s] property caused by
[Appellees=] development activities,
[TRE] filed suit against [Appellees] in 2002. 
In a spirit of compromise, and to avoid the expense of continued
litigation, [TRE] agreed to provide [Appellees] with the opportunity to rectify
the situation causing the flooding of [TRE=s] property. 
[TRE] agreed that it would discontinue pursuing litigation against
[Appellees] only if and until [Appellees] took the necessary remedial steps to
prevent the flooding onto [TRE=s] property. 
The [r]etention pond which was constructed as the alternative to the
easement which [TRE] was unwilling to sell was wholly ineffective.  [Appellees] intended that the [r]etention
pond would solve the flooding anticipated by the construction of the
development; however, during periods of significant rainfall the [r]etention
pond stands dry while [TRE=s] property continues to be damaged by flooding.

 

In response, Developer, Turner, Mario, and Austin
each filed no-evidence and traditional motions for summary judgment.  The trial court granted their motions.  This appeal followed.

                                          III.  Discussion

TRE asserts in its first issue that the trial
court erred by granting no-evidence summary judgments in favor of Developer and
Turner as to TRE=s negligence, nuisance,
trespass, and gross negligence claims, and in favor of Mario and Austin as to
TRE=s
nuisance and trespass claims.  In its
second issue, TRE argues that the trial court erred by granting summary judgments
in favor of Developer, Turner, Mario, and Austin, as to all of TRE=s claimsCeach
moved for traditional summary judgment on the grounds of limitations and no
damages.

A.  Standard of Review








Our review of a summary judgment is de novo to
determine whether a party=s right to prevail is
established as a matter of law.  Tex. R.
Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995).  When, as here, a trial court=s order
granting summary judgment does not specify the grounds relied upon, the
reviewing court must affirm summary judgment if any of the summary judgment
grounds are meritorious.  FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872B73 (Tex.
2000); Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).

When a party moves for summary judgment under
both rules 166a(c) and 166a(i), we will first review the trial court=s
judgment under the standards of rule 166a(i). 
Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  When reviewing a no-evidence summary
judgment, we examine the entire record in the light most favorable to the
nonmovant, indulging every reasonable inference and resolving any doubts
against the motion.  Sudan v. Sudan,
199 S.W.3d 291, 292 (Tex. 2006).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no-evidence summary judgment is
not proper.  Moore v. K Mart Corp.,
981 S.W.2d 266, 269 (Tex. App.CSan
Antonio 1998, pet. denied).  We review a
no‑evidence summary judgment for evidence that would enable reasonable
and fair‑minded jurors to differ in their conclusions.  Hamilton v. Wilson, 249 S.W.3d 425,
426 (Tex. 2008) (citing City of Keller v. Wilson, 168 S.W.3d 802, 822
(Tex. 2005)).

B.  Damages








In TRE=s first
issue, TRE asserts that the trial court erred by granting each Appellee=s
no-evidence motion for summary judgment. 
As a sub-issue, TRE complains that the trial court erred by granting
Turner=s motion
to strike TRE=s summary judgment evidence. 

1. 
Background

TRE alleged various causes of action belowCnegligent
and intentional diversion of water, nuisance, trespass, violation of the water
code, gross negligence, and common law diversionCand sought
damages for each of its claims.  In
response, each Appellee filed a no-evidence motion for summary judgment,
asserting, among other things, that there was no evidence of damages for any of
TRE=s causes
of action.[4]  Consequently, the burden shifted to TRE to
raise a genuine issue of material fact on the damages element of each of its
claims in order to avoid summary judgment. 
See Tex. R. Civ. P. 166a(I).








In an attempt to meet its burden on damages, TRE
attached to its response James Ryffel=s[5]
and Ahmad Khammash=s[6]
affidavits and argued that the affidavits contained evidence of damages to
support each of TRE=s claims.[7]  After a thorough review of Ryffel=s
affidavit, we encountered the following pertinent portion on damages:

In my opinion, the property of Trinity River
Estates, LP has been damaged between $1.8 and $2.2 million dollars based upon
the reduction in value of the overall site that has been caused by the
inability to develop a number of lots thereon and the necessity, when the
property is developed, to install a retaining pond.

However, after a similar review of Khammash=s
affidavit, although there was evidence that might raise a fact issue as to an
injury to TRE, nothing addressed TRE=s
damages.[8]








Turner filed objections and a motion to strike
the portion of Ryffel=s affidavit pertaining to
damages on the grounds that it was conclusory and that Ryffel was not an
expert; it also filed a motion to strike Khammash=s entire
affidavit on the grounds that it was unreliable and irrelevant.  The trial court sustained Turner=s
objections.








In support of its argument that it raised a fact
issue regarding damages as to its claims against each Appellee, TRE directs our
attention to Ryffel=s and Khammash=s
affidavits[9]
and argues that the trial court erred by granting Turner=s motion
to strike them from TRE=s summary judgment evidence.[10]  Specifically, TRE argues that Ryffel, as the
sole limited partner of TRE, falls under the AProperty
Owner Rule@ and therefore Ryffel=s
opinion as to the value of his property raises a fact issue as to damages.  The Appellees, however, argue that Ryffel=s
affidavit is conclusory and therefore does not constitute competent summary
judgment evidence.








2. 
Applicable Law

Affidavits supporting and opposing a motion for
summary judgment must set forth facts, not legal conclusions.  See Mercer v. Daoran Corp., 676 S.W.2d
580, 583 (Tex. 1984); AMS Constr. Co. v. Warm Springs Rehab. Found., Inc.,
94 S.W.3d 152, 157 (Tex. App.CCorpus
Christi 2002, no pet.).  A conclusory
statement is one that does not provide the underlying facts to support the
conclusion, and it is insufficient to create a question of material fact to
defeat summary judgment.  IHS Cedars
Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 803 (Tex.
2004); McIntyre v. Ramirez, 109 S.W.3d 741, 749B50 (Tex.
2003).  To constitute competent summary
judgment evidence, the testimony must provide an explanation linking the basis
of the conclusion to the facts.  Windsor
v. Maxwell, 121 S.W.3d 42, 49 (Tex. App.CFort
Worth 2003, pet. denied).








The Supreme Court of Texas has held that property
owners who are familiar with the market value of their property, including real
property, may testify as to their opinions regarding this value, even though
they do not qualify as expert witnesses and even though they would not be
allowed to testify regarding the market value of property they do not own.  See Redman Homes, Inc. v. Ivy, 920
S.W.2d 664, 669 (Tex. 1996); Porras v. Craig, 675 S.W.2d 503, 504B05 (Tex.
1984).  The Property Owner Rule is based
on the premise that property owners ordinarily know the market value of their
property and therefore have a sound basis for testifying as to its value.  See Porras, 675 S.W.2d at 504; State
v. Berger, 430 S.W.2d 557, 559 (Tex. Civ. App.CWaco
1968, writ ref=d n.r.e.).  For a property owner to qualify as a witness,
his testimony Amust show that it refers to
market, rather than intrinsic or some other value of the property.@  Porras, 675 S.W.2d at 504B05.  This requirement is usually met if the owner
testifies that he is familiar with the market value of his property.  AMarket
value@ is the
price property would bring if offered for sale by one who desires, but is not
obligated to sell, and is bought by one who is under no obligation to buy.  Exxon Corp. v. Middleton, 613 S.W.2d
240, 246 (Tex. 1981).

3. 
Analysis








Assuming without deciding that the Property Owner
Rule applies to Ryffel, Ryffel=s
affidavit is conclusory and therefore not competent summary judgment evidence
that raises a fact issue as to damages.[11]  See Ryland Group, Inc. v. Hood, 924
S.W.2d 120, 122 (Tex. 1996) (stating A[c]onclusory
affidavits are not enough to raise fact issues@); Residential
Dynamics, LLC v. Loveless, 186 S.W.3d 192, 198 (Tex. App.CFort
Worth 2006, no pet.) (stating A[a]
conclusory statement is one that does not provide the underlying facts to
support the conclusion@).








The only testimony in Ryffel=s
affidavit pertaining to damages was that ATrinity
River Estates, LP has been damaged between $1.8 and $2.2 million dollars based
upon the reduction in value of the overall site.@  However, in order for an owner=s
testimony to qualify under the Property Owner Rule, the owner must testify as
to the market value.  See Porras,
675 S.W.2d at 504 (holding that in a suit for permanent damage to land, the
measure of damages is the difference in the market value of the land
immediately before and immediately after the injury).  The evidence here contains no basis for
Ryffel=s
opinion.  We cannot determine from the
affidavit whether the reduction in value is based on market, intrinsic, or some
other value.  See id. at 505
(stating that in order for a property owner to qualify as a witness to the
damages to his property, his testimony must show that it refers to market,
rather than intrinsic or some other value of the property).  Therefore, because Ryffel=s
testimony as to damages is conclusory, and because TRE did not offer any other
evidence of damages, we hold that the trial court did not err by granting
Developer=s, Turner=s, Mario=s, and
Austin=s
no-evidence motions for summary judgment on the ground that TRE did not raise a
genuine issue of material fact as to damages on each of its claims.  Furthermore, because Ryffel=s
affidavit is conclusory, we hold the trial court did not abuse its discretion
by granting Turner=s motion to strike.  Accordingly, we overrule TRE=s first
issue.

Because Appellees conclusively established
entitlement to judgment based on no-evidence of damages as to each of TRE=s
claims, we need not address TRE=s
remaining issue.  See Tex. R. App.
P. 47.1 (stating opinions should address only issues necessary to final
disposition of appeal).

                                          IV.  Conclusion

Having overruled TRE=s
dispositive issue, we affirm the trial court=s
judgments.

 

BOB
MCCOY

JUSTICE

 

 

PANEL:      CAYCE,
C.J.; DAUPHINOT and MCCOY, JJ.

 

DELIVERED: May 28, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Tex. R. App. P. 38.1(g)
(declaring, A[i]n a civil case, the
court will accept as true the facts stated unless another party contradicts
them@).





[3]In later amended
petitions, TRE dropped the water code causes of action as to Mario, Austin, and
Turner but added causes of action for gross negligence and common law diversion
of water as to all of the parties.





[4]Each Appellee moved for
no-evidence summary judgment on each element of each of TRE=s causes of action.





[5]Ryffel is the sole
limited partner of TRE.





[6]Khammash is a registered
professional engineer in the State of Texas.





[7]We note, however, that
TRE did not direct the trial court to any specific evidence within the
affidavits to support its claim of damages but rather asked the trial court to Asee Ryffel=s and Khammash=s affidavits.@  See Nawas v. R & S Vending, 920
S.W.2d 734, 737 (Tex. App.CHouston [1st Dist.] 1996, no writ) (stating that
courts of appeals are not required to search the record without guidance from
appellant to determine whether it has produced evidence raising a genuine issue
of material fact on the elements challenged by appellees); but see Johnson
v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002) (holding
that appellant=s response, which did not
connect facts to the challenged elements, was adequate for considering whether
a fact issue had been raised).





[8]Khammash=s affidavit stated in
pertinent part:

 

The Trinity Gardens site
prior to development was composed of approximately 23 acres covered with
vegetation, mostly grass with light tree cover and two large ponds of combined
volume of 650,504 cubic feet. . . . 
These retention ponds were completely eliminated as part of the Trinity
Gardens Addition development.  A much
smaller (approximately 50,000 cubic feet) retention pond from which the upper
half of the development area flows, was constructed. . . .

 

Prior to the development
of the Trinity Gardens property the original rainstorm runoff coefficient of
the area was approximately .3.  After
development the runoff coefficient of the area is .55.  Therefore, the amount of runoff from any
rainstorm will increase dramatically over the entire Trinity Gardens developed
area at times when there does not exist a non-saturated soil condition.

 

It is my opinion based upon the foregoing that the Trinity Gardens
development severely reduced upstream pervious areas and eliminated the
previously existing retention ponds. . . . 
It is my opinion that the development of the Trinity Gardens Addition
has increased the cumulative volume and frequency of storm water runoff onto
the property of Trinity River Estates, LP. 
It is my further opinion that [Turner] failed to adequately provide for
this increased runoff in its engineering plans it prepared. . . .  Additionally, it is my professional opinion
that [Turner] knew or should have known that increased water runoff from the
Trinity Garden development would adversely affect the property of Trinity River
Estates, LP.  Additionally, it is my
professional opinion that the retention pond constructed as part of the
upstream development has had no [e]ffect in mitigating the increased water
runoff onto the property of Trinity River Estates, LP.  Based on all of the foregoing, it is my
professional opinion that [Turner] was negligent in failing to provide adequate
storm water drainage plans for the development and that this negligence has
resulted in substantial increased flooding to the property of Trinity River
Estates, LP.





[9]TRE also refers us to a
portion of Ryffel=s deposition attached to
Turner=s motion.  TRE argues that even if the portion of Ryffel=s affidavit pertaining to
damages was struck by the trial court, the same evidence is contained within
the summary judgment evidence proffered by Turner in its motion for summary
judgment.  However, in a no‑evidence
motion for summary judgment, the non‑movant bears the burden of producing
competent summary judgment evidence; therefore, in this case, TRE bore the
burden of producing proper summary judgment evidence, not Turner.  See Tex. R. Civ. P. 166a(i).  Accordingly, pursuant to this rule, we have
not considered the evidence attached by Turner in conjunction with its
motion.  See Southtex 66 Pipeline Co.,
Ltd. v. Spoor, 238 S.W.3d 538, 542 n.1 (Tex. App.CHouston [14th Dist.]
2007, pet. denied) (stating even though the movant in a no‑evidence
summary judgment attached evidence, the appellate court did not consider the
evidence).  Furthermore, even if we were
to consider Ryffel=s deposition testimony,
it, like Ryffel=s affidavit, is
conclusory and therefore does not qualify as competent summary judgment
evidence.





[10]Having determined that
Khammash=s affidavit did not
include evidence of damages, we need not include it in the remaining discussion
pertaining to damages.





[11]Furthermore, even if we
were to consider Ryffel=s deposition testimony,
Ryffel admits that he has had no appraisal done on the property.